AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
## for the
### District of Arizona

In the Matter of the Search of
a white, android cell phone lawfully seized from Darren Robert Brooks

Case No. 24-2520MB

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before __10/31/2024__ *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to any United States Magistrate Judge on criminal duty in the District of Arizona.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 10/17/2024 at 9:51am    _____
                                                *Judge's signature*

City and state: Yuma, Arizona    Honorable James. F. Metcalf, U.S. Magistrate Judge
                                 *Printed name and title*

## ATTACHMENT A

*Seized Property*

The seized property to be searched consists of: one white, Android cell phone (the SUBJECT CELLULAR TELEPHONE), which is currently located and securely stored at the United States Border Patrol Station, in Yuma, Arizona, located at 7431 E. 30th Street, Yuma, Arizona, 85365. Based on my experience and training, I know that the SUBJECT CELLULAR TELEPHONE is stored in the same condition in which it was seized.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be Searched*

1.   Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE relating to violations of Title 8 U.S.C. § 1324 (Bringing in and harboring certain aliens), including:

   a. all information related to alien smuggling activity and benefits gained from committing this illegal activity;

   b. all information related to coordinators, co-coordinators, scouts, guides, drivers, recruiters, and money launderers involved in alien smuggling (including names, addresses, telephone numbers, locations, or any other identifying information);

   c. all bank records, checks, credit card bills, account information, or other financial records;

   d. any information recording schedule or travel;

   e. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

   f. evidence of the attachment to the cellular telephones of another storage device or similar container for electronic evidence;

   g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the cellular telephones;

   h. evidence of the times the cellular telephone was used;

   i. passwords and encryption keys that may be necessary to access the cellular telephones;

   a. records of or information about Internet Protocol addresses used by the cellular telephones;

   b. records of or information about the cellular telephone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet

       search engine, and records of user-typed web addresses;

    c. contextual information necessary to understand the evidence described in this attachment.

    j. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the SUBJECT CELLULAR TELEPHONE.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

FILED ☒    LODGED ___
RECEIVED ___    COPY ___

OCT 17 2024

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY NM    DEPUTY

In the Matter of the Search of
a white, android cell phone lawfully seized from Darren Robert Brooks

Case No. 24-2520 MB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

Located in the District of Arizona, there is now concealed: the property to be searched as described above, believed to conceal or contain:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Bringing In and Harboring Certain Aliens |

The application is based on these facts:

**See attached Affidavit of Border Patrol Agent Jorge Garibay**

☒ Continued on the attached sheet.
☐ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Louie Uhl

_Louie Uhl_

_/s/ Applicant's Signature_

Jorge Garibay, Border Patrol Agent
_Printed name and title_

_/s/ Judge's signature_

Honorable James F. Metcalf, U.S. Magistrate Judge
_Printed name and title_

Sworn and sworn to telephonically.
Date: __10/17/2024__

City and state: Yuma, Arizona

## ATTACHMENT A

*Seized Property*

The seized property to be searched consists of: one white, Android cell phone (the SUBJECT CELLULAR TELEPHONE), which is currently located and securely stored at the United States Border Patrol Station, in Yuma, Arizona, located at 7431 E. 30th Street, Yuma, Arizona, 85365. Based on my experience and training, I know that the SUBJECT CELLULAR TELEPHONE is stored in the same condition in which it was seized.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be Searched*

1.  Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE relating to violations of Title 8 U.S.C. § 1324 (Bringing in and harboring certain aliens), including:

    a. all information related to alien smuggling activity and benefits gained from committing this illegal activity;

    b. all information related to coordinators, co-coordinators, scouts, guides, drivers, recruiters, and money launderers involved in alien smuggling (including names, addresses, telephone numbers, locations, or any other identifying information);

    c. all bank records, checks, credit card bills, account information, or other financial records;

    d. any information recording schedule or travel;

    e. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

    f. evidence of the attachment to the cellular telephones of another storage device or similar container for electronic evidence;

    g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the cellular telephones;

    h. evidence of the times the cellular telephone was used;

    i. passwords and encryption keys that may be necessary to access the cellular telephones;

    a. records of or information about Internet Protocol addresses used by the cellular telephones;

    b. records of or information about the cellular telephone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet

       search engine, and records of user-typed web addresses;

   c. contextual information necessary to understand the evidence described in this attachment.

   j. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the SUBJECT CELLULAR TELEPHONE.

## **PACERAFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Jorge Garibay, a Border Patrol Agent of the United States Border Patrol, being duly sworn, does depose and state the following:

### I. **INTRODUCTION AND AGENT BACKGROUND**

1. Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the cellular telephone of DARREN ROBERT BROOKS (hereinafter "SUBJECT CELLULAR TELEPHONE"), as further described in Attachment A, to search for and seize the items from Attachment A, which represent evidence, fruits, and/or instrumentalities of the criminal violations further described below.

2. I am a United States Border Patrol Agent (BPA) and have been employed with the United States Border Patrol (USBP) since December 2019. As a Border Patrol Agent, your Affiant is responsible for investigating violations of laws enumerated in Titles 8, 18 and 21 of the United States Code (USC). Included in my responsibilities is the investigation of investigation and analyzing the illegal entry into the U.S. of aliens, and their further transport into the interior of the United States. In preparing to become a Border Patrol Agent, your Affiant attended the U.S. Border Patrol Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico.

3. Your Affiant is currently assigned to the Yuma Station Intelligence Collection Team, Yuma Station. Your Affiant is currently a law enforcement officer of the United States and is empowered by law to conduct investigations, make arrests, and execute search warrants. Your Affiant is familiar with, and has participated in, several traditional methods of investigation, including but not limited to; visual surveillance, questioning of witnesses, and the participation of search warrants. Your Affiant has also spoken with numerous individuals who have been involved in various aspects of alien smuggling, including recruitment, planning/conspiring, transportation, and concealment of

illegal aliens, as well as the collection, transportation, and repatriation of alien smuggling proceeds, and from doing so, has learned techniques commonly used by those involved in alien smuggling.

4. The statements contained in the Affidavit are based on information from your Affiant's personal knowledge, training, and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; and analysis of public records.

5. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## II. PROBABLE CAUSE

6. On October 11, 2024, Border Patrol Agents were assigned to the River (the Colorado River which serves as the border between the United States and Mexico in the relevant area) Area of Responsibility (AOR) located Yuma County, Arizona. The river AOR is patrolled east and west of Levee Road from County 7th Street to Country 21st Street. The approximate distance from the United States/Mexico Border to Levee Road varies from 50 yards to 1.30 miles. The river AOR also consists of agricultural fields, heavy agriculture equipment and work vehicles; primarily pickup trucks and a variety of smaller sedans. Historically, alien smugglers utilize the geographical layout and use trucks or other vehicles to portray themselves as agriculture workers to blend in with the agriculture traffic in the area.

7. On October 11, 2024, at approximately 0800 hours, Yuma Sector Communications camera operators (KAK 854) broadcasted via service radio that multiple suspected illegal aliens, having just illegally entered the U.S., from Mexico, were crossing the bridge in an eastern direction at County 14th Road and the Salinity canal. As they

crossed the bridge, they entered a red Pontiac Vibe that was parked at the bridge. Once all the suspected aliens were inside, the red Pontiac Vibe proceeded to travel eastbound on County 14th Road.

8.     The vehicle continued eastbound before Border Patrol Agents positioned their marked Border Patrol vehicles behind the red Pontiac Vibe and initiated an immigration enforcement stop on the vehicle. The immigration check confirmed that 10 out of the 12 occupants of the red Pontiac Vibe were illegal aliens; citizens of Mexico with no proper immigration documentation to enter or reside in the U.S The driver of the red Pontiac Vibe was identified as DARREN ROBERT BROOKS, a U.S. citizen.

9.     During a post-arrest interview, BROOKS admitted that he used his cellphone (the SUBJECT CELLULAR TELEPHONE) to coordinate with his co-conspirator who had masterminded and coordinated the alien smuggling event. BROOKS explained that he was told where to park his red Pontiac Vibe and the number of aliens that he was supposed to pick up. During the interview, BROOKS denied consent to agents to search the SUBJECT CELLULAR TELEPHONE. BROOKS and his codefendant Joedee Lynn Kessler were charged by criminal complaint with one count of conspiracy to transport illegal aliens in violation of Title Section 1324(a)(1)(A)(ii), 1324(a)(1)(B)(ii) and 1324(a)(1)(A)(v)(I) on October 11, 2024 in Magistrate Court, in Yuma, Arizona, in case number 24-02439MJ.

10.    Agents suspect that the events detailed above prove that BROOKS employed the SUBJECT CELLULAR TELEPHONE as a communication device to collect and receive payments, coordinate rides, and further the illegal entry into the U.S. of the illegal alien occupants that he was arrested with, as described above.

11.    Agents suspect the SUBJECT CELLULAR TELEPHONE will contain evidence in the form of electronic ledgers, electronic documents, monetary transactions, and photographs, coordinates, and other identifying information associated with the instant alien smuggling event. Investigators believe that that evidence will aid in developing

charges against known and unknown conspirers of BROOKS, his Alien Smuggling Organization and additional co-conspirators.

### III.  ITEMS TO BE SEIZED

12. Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in **Attachment A** will contain within the following information;

13. Based on my training, education, and experience, and discussions with other trained law enforcement personnel, your Affiant knows the following:

    a. That alien smugglers keep records of smuggling transactions and activities within their cellphones readily accessible, such as harboring or human storage areas, and hiding location and travel routes to conceal themselves from law enforcement authorities.

    b. That alien smugglers maintain various amounts of monetary transactions and arrangements in to finance their ongoing illegal activities and other businesses, as well as using the currency to pay transporters and human smuggler care takers.

    c. That alien smugglers often have messages and account information from large proceeds from alien smuggling, records and receipts, vehicle rental agreements from vehicle rental facilities.

    d. That alien smugglers engage in interstate and foreign travel to transport undocumented individuals and their smuggling proceeds. Evidence of such travel is often maintained in the form of text messages, emails, credit card receipts, hotel receipts, travel agency vouchers, all recorded through electronic receipts often received though their mobile device. In addition to there are records of long-distance telephone calls and other items reflecting domestic and foreign travel.

e. That alien smugglers and their associates who smuggle undocumented individuals into the United States will have maps images showing smuggling routes, foreign fuel receipts, receipts showing travels to source countries, receipts pertaining to the purchase and registration of human smuggling vehicles, receipts showing modifications and repairs of vehicles, receipts showing the purchase of items commonly used by smugglers such as portable radios, cellular phones, pagers, firearms and other equipment used for transporting large numbers of undocumented subjects;

f. That alien smugglers and their associates who smuggle undocumented subjects into the United States use cellular telephones to further their smuggling operation to include arrangement of pickups, drop-offs, coordination of load drivers and payment of smuggling fees.

g. That alien smugglers communicate via audio message or text message to discuss prior incidents where they had to display or are willing to display and use loaded firearms for security during smuggling operations to safeguard, maintain and control their illegal smuggling activities.

## IV.  DIGITAL EVIDENCE STORED WITHIN ELECTRONIC STORAGE MEDIA

14. As described in Attachment A, this application seeks permission to search for records that might be found within the subjects cell phone, in whatever form they are found, including data stored on text messages, voice messages, voicemails, missed calls emails, photographs, social media applications such as but not limited to Facebook, Facebook Messenger, Snapchat, WhatsApp, Waze, SIM card, Internet searches; Websites and mobile applications can record additional information, such as the times the cell phone was in use.

15. As explained herein, information stored within ethe cellphone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within cell phones (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history) can indicate who has used or controlled the cell phone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant of a cell phone. The existence or absence of text messages, mobile applications, voice messages, voicemails, missed calls may indicate whether the cellphone was remotely accessed, thus inculpating, or exculpating the owner.

16. Further, activity on an electronic storage medium can indicate how and when the storage medium was accessed or used. For example, as described herein, cellphones typically contain information that log cell phone user account session times and durations, cell phone activity associated with user accounts, electronic storage media that connected with the cell phone, and the IP addresses through which the cell phone accessed networks and the internet. Such information allows investigators to understand the chronological context of electronic storage media access, use, and events relating to the crime under

investigation. Additionally, some information stored within the cell phone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cell phone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files may also indicate the existence of additional cellphones in use not previously identified. The geographic and timeline information described herein may either inculpate or exculpate the user of the electronic storage medium. Last, information stored within an cell phone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a cell phone may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

   17. Imaging is the taking of a complete electronic picture of the cell phone's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the cell phone, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

    a. *The time required for an examination.* As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a cell phone has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine electronic storage media to obtain evidence. Electronic storage media can store a large volume of information.

Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

    b. *Technical requirements.* Cell phones can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of a mobile device's software makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises. However, taking the electronic storage media off-site and reviewing it in a controlled environment allows for a thorough examination with the proper tools and knowledge.

    c. *Variety of forms of electronic media.* Records sought under this warrant could be stored in a variety of electronic storage media formats that may require off-site reviewing with specialized forensic tools.

  18. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit seizing, imaging, or otherwise copying electronic storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts the internal mobile components to human inspection in order to determine whether it is evidence described by the warrant.

## V. CONCLUSION

19. Your Affiant submits there is probable cause to believe that the items listed in Attachment A, which constitute evidence, fruits, and/or instrumentalities of violations of Title 8, United States Code, Section 1324 (Bringing in and Harboring Certain Aliens) are likely to be found on the SUBJECT CELLULAR TELEPHONE which is further described in Attachment A.

_____
Jorge Garibay
Border Patrol Agent

Subscribed and Sworn to Telephonically this 17th day of October, 2024.

_____
HONORABLE JAMES F. METCALF
United States Magistrate Judge